IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| YVETTE GRADY, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CASE NO. CV 03-B-0192-S |
| | } | |
| BELLSOUTH, | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

Currently before the court is a Motion for Summary Judgment (doc. 10), filed by defendant BellSouth. Plaintiff Yvette Grady alleges racial discrimination claims against defendant Bellsouth for failure to promote and a retaliation claim.[1] (Doc. 1.) Also pending before the court are two Motions to Strike filed by plaintiff (docs. 13, 17), and a Motion to Strike filed by Bellsouth (doc. 15). Upon consideration of the record, submissions of the parties, argument of counsel, and the relevant law, the court is of the opinion that the defendant's Motion for Summary Judgment is due to be granted,

---

[1] In her brief in opposition to defendant's Motion for Summary Judgment, plaintiff only opposed defendant's motion for summary judgment on plaintiff's failure to promote claim arising out of McIntire's selection of Tabor and Hawkins, and not plaintiff, for the position of first-level manager. During oral argument plaintiff's counsel acknowledged this was the only claim plaintiff was pursuing. Thus, plaintiff's other claims are abandoned. *See Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)). Only the facts relevant to plaintiff's non-abandoned claims will be discussed in this Opinion.

plaintiff's Motions to Strike are due to be denied, and defendant's Motion to Strike is due to be granted in part and denied in part.

I.    **Factual Summary**[2]

Yvonne Grady, a black female, was a service representative in the invoicing group of BellSouth's Local Interconnection Service Center ("LISC") from 1998 to July 2001. (Doc. 11, Ex. 1 ¶¶ 2-3; Ex. 4 at 185-86 and ex. 17.) Each service representative is supervised by a first-level manager, who is supervised by a second-level manager. (Doc. 11, Ex. 1 ¶ 4.) Joan Bentley, a black female, was plaintiff's first-level manager and direct supervisor, and Richard McIntire was plaintiff's second-level manager. (Doc. 11, Ex. 1 ¶¶ 5-6.) Jon Rey Sullivan was McIntire's supervisor, and the two of them were the only individuals involved in selection decisions for open positions in McIntire's group. (Doc. 11, Ex. 1 ¶¶ 7, 10.) In December 2000, plaintiff applied for two open positions as a first-level supervisor under McIntire. (Doc. 11, Ex. 1 ¶ 9.) Plaintiff did not receive a promotion, and on April 17, 2001, plaintiff filed a Charge of Discrimination against BellSouth. (Doc. 11, Ex. 4 at 128-29 and ex. 8.)

Prior to her application for the first-level positions, plaintiff had attendance issues, mostly stemming from an injury to her hip as a child. (Doc. 11, Ex. 4 at 36-37, 161.) Prior to her surgery in 1999, either in 1998 or 1999, plaintiff was disciplined for attendance while at BellSouth. (Doc. 11, Ex. 4 at 38, 95-97.) From January through

---

[2]For purposes of summary judgment, all facts and reasonable inferences therefrom are drawn in favor of the plaintiff.

August 1999, plaintiff was absent from work on numerous occasions. (Doc. 11, Ex. 4 at 160-63 and exs. 12, 13.) Plaintiff had hip replacement surgery in September 1999. (Doc. 11, Ex. 4 at 36.) Due to her surgery plaintiff was absent from work for six months; she did not return to work until March 2000. (Doc. 11, Ex. 4 at 137-39, 152-53.) When plaintiff returned in March 2000, she gradually worked two hours, then four, then six, before returning to full time work in September 2000. (Doc. 11, Ex. 4 at 137-40, 152-54, 189-90 and ex. 18.) In November 2000, plaintiff broke her foot and missed work from November 14 to December 8. (Doc. 11, Ex. 4 at 179-80.) In July 2001, plaintiff became totally disabled and stopped working for BellSouth. (Doc. 11, Ex. 4 at 69-70, 118-22.)

In December 2000, plaintiff applied for a promotion to a first-level manager position in Richard McIntire's group. (Doc. 1 ¶ 7; Doc. 11, Ex. 1 ¶ 9; Ex. 4 at 104.) There were two openings in McIntire's group at the time plaintiff applied. (Doc. 11, Ex. 4 at 104.) McIntire interviewed the candidates and made recommendations to his supervisor, Jon Rey Sullivan. (Doc. 11, Ex. 4 at 76-77; Ex. 1 ¶ 10.) McIntire and Sullivan were the only two people involved in the selection decisions. (Doc. 11, Ex. 1 ¶ 10; Ex. 3 ¶ 3.) One of McIntire's positions required proficiency with invoice processing, while the other position required knowledge and experience performing Access Service Requests ("ASR's"). (Doc. 11, Ex. 1 ¶ 11.) McIntire required candidates to possess effective communication skills, an ability to build productive relationships with co-workers and customers, and an aggressive attitude toward their work; he also considered their education and prior managerial experience. (Doc. 11, Ex. 1 ¶¶ 12, 14.) McIntire

also knew Sullivan required candidates to have a record of regular and predictable attendance. (Doc. 11, Ex. 1 ¶ 13, Ex. 3 ¶ 5.) Plaintiff asked Sullivan what she needed to do to be promoted, and he told her to improve her attendance record because regular and predictable attendance was a requirement of obtaining a promotion. (Doc. 11, Ex. 3 ¶ 5; Ex. 4 at 112, 115-16.)

Ann Tabor and Sheila Hawkins were the individuals recommended by McIntire and approved by Sullivan to fill the positions. (Doc. 11, Ex. 1 ¶¶ 16, 23.) Tabor was a service representative in McIntire's group prior to her promotion, and he observed her work. (Doc. 11, Ex. 1 ¶¶ 18, 19.) Tabor completed special projects to settle disputes while a service representative, and McIntire believed she handled them aggressively and professionally. (Doc. 11, Ex. 1 ¶ 20.) McIntire believed Tabor demonstrated the necessary skills necessary for the position, "including proficiency in processing invoices, regular and predictable attendance, effective communication skills, the ability to build productive relationships with co-workers and customers, and an aggressive attitude toward her work." (Doc. 11, Ex. 1 ¶ 21.) Tabor also had a college degree in math. (Doc. 11, Ex. 1 ¶ 22.)

Hawkins was a service representative in another group within BellSouth's Local Interconnection Service Center, but McIntire spoke with her supervisor and her manager, both of whom "highly recommended" Hawkins for the position. (Doc. 11, Ex. 1 ¶¶ 25, 26.) Hawkins had been a top performer, was one of the most knowledgeable about ASR's, and had successfully served as a relief supervisor on many occasions while a

service representative. (Doc. 11, Ex. 1 ¶ 27.) After interviewing her, McIntire believed Hawkins also possessed the skills and attributes necessary for the first-level position: she had "knowledge and experience with ASR's, regular and predictable attendance, effective communication skills, an ability to build productive relationships with co-workers and customers, and an aggressive attitude toward her work." (Doc. 11, Ex. 1 ¶ 28.) McIntire also liked Hawkins's prior experience as a relief manager in her previous group. (Doc. 11, Ex. 1 ¶ 29.)

Having observed her work and being familiar with her job performance, McIntire felt plaintiff was not as qualified as Tabor and Hawkins. (Doc. 11, Ex. 1 ¶¶ 6, 30.) Tabor processed invoices faster than plaintiff, while Hawkins had more experience with ASR's. (Doc. 11, Ex. 1 ¶¶ 31, 32; Ex. 6 at 12.) In McIntire's view, they both had a superior ability to build productive relationships with co-workers and customers because plaintiff avoided interactions with others, isolated herself in groups, had a shy disposition, often failed to build rapport and effective working relationships with co-workers or customers, and sometimes failed to cooperate with others. (Doc. 11, Ex. 1 ¶ 34.) Tabor and Hawkins asked for additional work and responsibility more frequently, they worked and solved problems more independently, they were more consistent with following up on issues which required further investigation, and they had superior productivity. (Doc. 11, Ex. 1 ¶ 35.) Tabor and Hawkins also had prior managerial or supervisory experience, while plaintiff did not. (Doc. 11, Ex. 1 ¶ 36.) Plaintiff also had an irregular and

unpredictable attendance record related to her medical troubles. (Doc. 11, Ex. 4 at 137-40, 152-54, 160-63, 179-80, 189-90 and exs. 12, 13, 18; Ex. 3 ¶ 5.)

## II.   Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met her burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

III. **Motions to Strike**

    A. **Plaintiff's Motion to Strike the Declaration of Richard McIntire**

Plaintiff moves the court to strike the Declaration of Richard McIntire contending that it contradicts his deposition testimony. In his Declaration, McIntire states Tabor and Hawkins were recommended for promotion in part because "regular and predictable attendance" is a skill or attribute necessary for that position. (Doc. 11, Ex. 1 ¶¶ 21, 28.) He does not state that he personally used attendance as a factor for promotion. In his deposition, when asked whether plaintiff's absences played a role in deciding not to recommend plaintiff, he stated, "not from *my* evaluation, no, sir." (Doc. 13, Ex. 1 at 23.) (Emphasis added)[3]  There is not an irreconcilable conflict between McIntire's Declaration and his deposition testimony. Therefore, plaintiff's Motion to Strike will be denied.

    B. **BellSouth's Motions to Strike**

        1. **EEOC Determination**

In its Motion to Strike, Bellsouth seeks to strike several pieces of evidence submitted by plaintiff. BellSouth seeks to strike the EEOC's Determination[4] because the director, Cynthia Pierre, signed it and there is not a detailed explanation of the evidentiary

---

    [3]The evidence shows that McIntire knew that Sullivan, McIntire's supervisor and the ultimate decision-maker, thought attendance was very important.

    [4]The Determination found "reasonable cause to believe [defendant] failed to promote the [plaintiff] because of her race, Black." Doc. 14, Ex. 4 at 1.

-7-

basis for the Determination. In addition, BellSouth points to an alleged EEOC policy that existed in the Birmingham office, where Pierre encouraged EEOC investigators to issue "cause" determinations. *See* Doc. 15 at 4-6. BellSouth argues this evidence shows the EEOC's cause Determination is not trustworthy.

Despite this evidence, defendant's Motion to Strike will be denied. Although defendant's Motion to Strike will be denied, the Determination does not alter the court's opinion that defendant is entitled to judgment as a matter of law. In deciding defendant's motion for summary judgment on plaintiff's discrimination claim, the court has considered the cause finding of the EEOC. Although the EEOC made a finding that "there is reasonable cause to believe [defendant] failed to promote the [plaintiff] because of her race, Black,"[5] this finding is not supported by explanation or evidence. Therefore, the court finds that the cause finding is of no evidentiary value. *See Barfield v. Orange County*, 911 F.2d 644, (11th Cir. 1990), *cert. denied* 500 U.S. 954 (1991); *see also Lee v. Executive Airlines, Inc.*, 31 F. Supp. 2d 1355, 1357 (S.D. Fla. 1998)("Absent providing any details or otherwise describ[ing] 'the evidence' relied upon, the Letter of Determination possesses minimal probative value." (citing *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304 (8th Cir. 1984))).

---

[5]*See* Doc. 14, Ex. 4 at 1.

      **2.    Opinions of Joan Bentley**

BellSouth argues that Joan Bentley's opinion testimony that BellSouth discriminated against plaintiff in its selection of Tabor should be stricken from the record. Federal Rule of Evidence 701 states a witness' testimony in the form of opinions or inferences:

> is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. of Evid. 701 (2003). Here, Bentley's opinions fail to satisfy the first two prongs of this test.

In *Hester v. BIC Corporation*, 225 F.3d 178, 184 (2nd Cir. 2000), the court found that none of plaintiff's four witnesses were involved in or had personal knowledge of the decision-making process. Their testimony involved only subjective impressions that the actions taken towards plaintiff were due to his race. *Id.* The court held that Fed. R. Evid. 701:

> bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision. Witnesses are free to testify fully as to their own observations of the defendant's interactions with the plaintiff or with other employees, but "the witness's opinion as to the defendant's [ultimate motivations] will often not be helpful within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant" was motivated by an impermissible animus. . . . [The witnesses] speculative lay opinion that [differential treatment] is attributable to race rather than anything else, is not helpful in this case because it "merely tell[s] the jury what result to reach."

*Id.* at 185 (citations omitted). "[S]eldom will be the case when a lay opinion on a ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an 'oath helper.'" *Mitroff v. Xomox Corp.*, 797 F.2d 271, 276 (6th Cir. 1986). A witness' opinion, which draws a legal conclusion, is not the appropriate subject of a lay opinion. *Mays v. Union Camp Corp.*, 114 F. Supp. 2d 1233, 1244 (M.D. Ala. 2000). Even though Bentley opined that defendant discriminated against plaintiff, she was not even aware of who the decision-maker was for the first-level manager position that Ann Tabor held:

> Q. Was it your opinion that Yvette Grady was being discriminated against with respect to promotions at BellSouth?
>
> A. To specific promotions or to promotions in general?
>
> Q. Well, specifically the promotion that Ann Tabor got.
>
> A. Yes.
>
> Q. Do you know who the decision-maker was, the person who selected Ann Tabor for that position?
>
> A. No.

(Doc. 13, Ex. 2 at 25.)

Bentley also testified she believed plaintiff was better qualified for the promotion than Tabor and Hawkins. (Doc. 13, Ex. 2 at 21-22.) However, there is no evidence that Bentley knew of the specific qualifications or requirements for promotion to a first-level manager position.

Bentley was a first-level manager under McIntire. She was neither a decision-maker nor part of the decision-making process for promoting individuals to first-level manager positions under Richard McIntire. McIntire and his supervisor, Jon Rey Sullivan, were the only individuals involved in the selection decision, and no one else, including Bentley, had any input in the decision. (Doc. 15, Ex. 3 at 9-10; Doc. 11, Ex. 1 ¶ 10.)

If Bentley did not know who the decision-maker was, or what specific qualifications BellSouth used when promoting employees, then she could not rationally know that discrimination occurred. Bentley lacked any personal knowledge as to the process for making promotion decisions, and there is no logical basis for her statement/opinion that plaintiff was discriminated against with respect to BellSouth's promotion decisions. In the last five years Bentley never heard any supervisors use racial slurs or tell racial jokes in the last five years (doc. 13, ex. 2 at 28), and she also never heard McIntire say anything leading her to believe he was biased or prejudiced against blacks (doc. 13, ex. 2 at 28). Bentley's statement that plaintiff was being discriminated against amounts to pure speculation. Therefore, Bentley's deposition testimony stating her opinion that plaintiff was discriminated against is due to be stricken from the record.

A blanket statement by a co-worker that an individual is more qualified than another, without sufficient evidence to support the conclusion, is not admissible. Bentley does not have specific knowledge as to the requisite qualifications used by McIntire and Sullivan in making the promotion decision for the first-level manager position.

Therefore, Bentley's testimony that plaintiff was more qualified than Tabor and Hawkins is also due to be stricken.

### 3. Evidence of other complaints of discrimination against BellSouth

The evidence of other complaints of discrimination was asserted by Joan Bentley in her deposition (doc. 15, ex. 3; doc. 14, ex. 2.) and includes: (1) a statement that she received a race discrimination complaint about McIntire from another employee, and (2) a statement that Bentley believed she had been discriminated against in promotions at BellSouth. Bentley testified:

> Q. Have you felt that at some point in time you've been discriminated against while working at BellSouth?
>
> A. Yes.
>
> Q. With respect to promotions?
>
> A. Yes.

(Doc. 14, Ex. 2 at 26-27.)

Later, there are follow-up questions, where Bentley states:

> Q. During the time period that you reported to [McIntire], did you ever feel that he discriminated against you?
> . . . .
> A. Then no, I can't say he's discriminated against me.
>
> Q. Did you ever feel like he treated you differently because of your race?
>
> A. No, not because of my race.
>
> Q. Because of your sex?

> A. Yeah, because of my sex.
>
> Q. In what respect?
>
> A. In my opinion, [McIntire] is more of an old-fashioned type person that feels women need to be more nurtured. So in that respect, sexwise, yes

(Doc. 14, Ex. 2 at 31-32.) Bentley's deposition shows she believed she was discriminated against due to her gender, not her race which is at issue in this case.

Bentley also mentioned another employee being discriminated against, and testified as follows:

> Q. Did you ever have anybody else come to you and complain, other than [plaintiff], that they felt [McIntire] discriminated against them because of their race?
>
> A. Yes.
>
> Q. Who?
>
> . . . .
>
> A. They are making me tell. The person that came to me was Kate Reynolds.
>
> Q. Was her complaint also about promotions?
>
> A. No.
>
> Q. What was her complaint about? Just generally. I mean, you don't have to get specific.
>
> A It's more of what I said about [McIntire] being on the old-fashioned side.
>
> . . . .
>
> Q. And was anything resolved by that?
>
> A. I haven't heard her make the complaint again.

(Doc. 14, Ex. 2 at 32-35.) This testimony is not sufficient to show race discrimination on the part of Richard McIntire or BellSouth. Bentley states another employee, Reynolds, complained about McIntire being "on the old-fashioned side." Even accepting Bentley's evidence as true, the evidence does not establish pretext. Moreover, the evidence does not relate directly to plaintiff, and courts have been reluctant to consider "prior bad acts" in this context. *Denney v. City of Albany*, 247 F.3d 1172, 1189-90 (11th Cir. 2001) (expressing doubt that evidence of prior acts of discrimination, when they do not relate directly to plaintiff, would be admissible to prove pretext). Therefore, the above testimony of Bentley is due to be stricken from the record.

### 4. Evidence of McIntire's history of promoting blacks

Defendant also seeks to strike plaintiff's evidence of McIntire's hiring history. Plaintiff points to pages 16 and 29 of McIntire's deposition. (Doc. 14, Ex. 3 at 16, 29.) When asked about his promotion decisions since January 1998, McIntire recalls making six promotions, five into management. (Doc. 14, Ex. 3 at 15-17.) One of the promotions, Joan Bentley, was black, and she was promoted in 1998 or 1999. (Doc. 14, Ex. 3 at 16-17.) McIntire supervises a total of seventeen people, and six are black. (Doc. 14, Ex. 3 at 28-29.) Plaintiff compares McIntire's promotion decisions to the fact that one-third of the people McIntire supervises are black, and contends that the number of black people promoted, one, is not proportionate to the number of black people he supervises, six. McIntire explains that "at the time most of those promotions were made, we were starting

the new group, and I had no service reps to make most of those promotions from. . . ." Therefore, plaintiff's comparison is not probative. The number of black employees supervised by McIntire represents their current representation in his work force, not the proportion of black candidates at the time McIntire made promotion decisions. This is not a valid comparison and this evidence will be stricken from the record. *See also Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1255 (11 Cir. 2000) (holding evidence that manager had a poor history of promoting women was too generalized to prove pretext).

**C. Plaintiff's Motion to Strike exhibits one and two of Bellsouth's Motion to Strike**

Plaintiff moves to strike Exhibits 1 and 2 to Defendant's Motion to Strike. (Doc. 17.) These exhibits have been offered in other cases to question the trustworthiness of an EEOC cause Determination. In this case, the court finds the cause Determination is not probative because no rationale is given for the finding. Therefore, it is unnecessary to consider other evidence which would call into question the trustworthiness of the cause finding. Therefore, in this particular case, the court has not considered Exhibits 1 and 2 to defendant's Motion to Strike, and plaintiff's Motion to Strike Exhibits 1 and 2 will be granted.

**IV. Discussion**

When a plaintiff brings a disparate treatment cause of action under Title VII, she bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In order to establish a prima facie

case of failure to promote in the absence of direct evidence, a plaintiff must show that: "(1) she is a member of a protected [class]; (2) that she was qualified and applied for the promotion; (3) that she was rejected despite these qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000). Once plaintiff establishes a prima facie case, the burden shifts to BellSouth to articulate a legitimate, non-discriminatory reason for its decision not to hire plaintiff. *McDonnell Douglas*, 411 U.S. at 802. Once BellSouth meets its burden, the burden then shifts to plaintiff to prove BellSouth's proffered reasons are not worthy of credence. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

### A. Prima Facie Case

The issue at the prima facie stage is whether plaintiff was actually qualified for the first-level manager positions for which she applied. Summary judgment is appropriate when a plaintiff fails to establish she is qualified for the position at issue. *Wu v. Thomas*, 847 F.2d 1480, 1484 (11th Cir. 1988), *cert. denied* 490 U.S. 1006 (1989). BellSouth contends that plaintiff was not qualified for a first-level manager position in McIntire's group. To be qualified, BellSouth asserts an individual had to have a record of regular and predictable attendance, in addition to the other requisite qualifications. Plaintiff was absent on multiple occasions in 1999 and 2000, and not all of her absences were related to her hip surgery. The selection decisions were made by Sullivan, after consultation with McIntire. Sullivan required regular and predictable attendance in order

for employees to be promoted to the first-level manager position, and Sullivan informed plaintiff that her attendance record needed to improve to be qualified for a promotion. Because plaintiff did not meet one of the qualifications established by Sullivan, that is, a record of regular and predictable attendance, BellSouth argues plaintiff was not qualified for the promotions and has failed to establish a prima facie case.

### B. Legitimate, Non-Discriminatory Reasons

Assuming, without deciding, that plaintiff has established a prima facie case of failure to promote, BellSouth has articulated legitimate, non-discriminatory reasons for her failure to be promoted. BellSouth has presented evidence that the decision-makers believed Tabor and Hawkins were better qualified. Selecting a more qualified candidate for a promotion is a legitimate, non-discriminatory reason for an employment decision. *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268-69 (11th Cir. 2001) (affirming summary judgment for employer who selected the candidate it believed was more qualified when plaintiff and the employee selected were both qualified for the position).

### C. Pretext

BellSouth argues that plaintiff has not offered sufficient evidence on which a reasonable jury could find defendant's legitimate, non-discriminatory reasons for not promoting plaintiff were pretext for unlawful race discrimination. A plaintiff cannot establish pretext by simply asserting that she has superior qualifications. "[D]isparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in

the face." *Lee v. GTE Florida*, 226 F.3d 1249, 1254 (11th Cir. 2000) (citation omitted). The disparities "must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Id.*

An employer is permitted to make promotion decisions based on both subjective and objective criteria so long as those reasons are reasons that might motivate a reasonable employer. *Chapman v. A1 Transport*, 229 F.3d 1012, 1033 (11th Cir. 2000) (en banc) (holding that subjective reasons for employment decisions are just as valid as objective reasons). Prior to recommending to Sullivan that Tabor and Hawkins be promoted, McIntire subjectively determined, through his observations of plaintiff and Tabor, that plaintiff was not as qualified as Tabor for the first-level supervisor position. He believed Tabor was more proficient at processing invoices, had better communication skills, better relationship skills, was more aggressive toward her work, and had prior managerial experience, all of which made Tabor the better candidate. McIntire also believed, based on his conversations with Hawkins's supervisors, that Hawkins had more experience dealing with ASR's, and that she also had better communication skills, better relationship skills, was aggressive toward her work, and had prior managerial experience. These factors, McIntire determined, also made Hawkins a better candidate than plaintiff for a first-level supervisor position. McIntire was of the opinion that plaintiff avoided interactions with others, isolated herself in groups, had a shy disposition, often failed to build rapport and effective working relationships with co-workers or customers, and

sometimes failed to cooperate with others. McIntire determined Tabor and Hawkins were better than plaintiff in these areas, and therefore, more qualified to be first-level supervisors.

Plaintiff offers as evidence of pretext the opinion of Joan Bentley, a first-level supervisor under McIntire, that plaintiff was "more qualified" than the other candidates for promotion. Even if Bentley's opinion is not stricken, it is not sufficient evidence to show pretext on the part of BellSouth. *See Steger v. General Elec. Co.*, 318 F.3d 1066, 1079 (11 Cir. 2003) (holding statements by non-decisionmakers will not satisfy the employee's burden of proving pretext). Given the factual evidence, no reasonable jury could find that the disparity in qualifications between plaintiff and Tabor and Hawkins is so great that a reasonable person could infer that Bellsouth promoted Tabor and Hawkins, even though it did not believe they were better qualified. *See Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001).

Further, to prove that she was substantially more qualified, plaintiff must do so according to the criteria selected by BellSouth. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (a plaintiff must rebut the employer's criteria head on). An employer may select its own criteria for making employment decisions. *Id.*, n. 18 (citing *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997) (a plaintiff may not question the wisdom of the employer's reasons where the reason is one that might motivate a reasonable employer)). Here, Sullivan considered regular attendance important in his decision to approve McIntire's promotion recommendations.

Plaintiff asserts she was more qualified because she had more seniority than Tabor and Hawkins, and because she had more experience with invoices and ASR's than Tabor. However, seniority was not a factor considered, and McIntire considered proficiency with invoices, not simply experience with invoices. (Doc. 11, Ex. 1 ¶ 15, Ex. 6 at 12, 14-15.) In addition, performing ASR's was not a requirement of the position to which Tabor was promoted. (Doc. 11, Ex. 1 ¶¶ 11, 21; Ex. 6 at 10-11.)

## V.   Conclusion

For the foregoing reasons, this court is of the opinion that BellSouth is entitled to judgment as a matter of law on plaintiff's claims that defendant discriminated against her on the basis of her race in promoting Ann Tabor and Sheila Hawkins to first-level manager positions in Richard McIntire's group. Judgment will be entered in favor of the defendant and against the plaintiff. An Order granting defendant's Motion for Summary Judgment will be entered contemporaneously with this Opinion.

**DONE** this the 28th day of September, 2004.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge